# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| IN RE:<br><br>**BAKER MANUFACTURING COMPANY, INC.,**<br><br>DEBTOR.[1] | **CASE NO. 18-81104**<br><br>**CHAPTER 11** |

**DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 507(b) AND 364, AND FED R. BANKR. P. RULE 4001(c): (I) AUTHORIZING THE DEBTOR TO OBTAIN DIP FINANCING; (II) GRANTING RELATED RELIEF; AND (III) SCHEDULING FINAL HEARING**

**NOW INTO COURT**, through undersigned counsel, comes the above-captioned debtor and debtor-in-possession (the "**Debtor**"), who hereby moves for entry of an interim order (the "**Interim DIP Order**"), substantially in the form of the proposed Interim DIP Order attached as **Exhibit 1**, and a final order (the "**Final DIP Order**") pursuant to sections 105(a), 507(b) and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"), and Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"): (i) authorizing, among other things, the Debtor to obtain DIP financing (the "**DIP Loan**") from BSPE1, LLC (the "**DIP Lender**"), which DIP Loan would be (a) secured by a junior lien on property of the estate that is subject to any existing liens, and a first-ranked lien on any property of the estate that is unencumbered, and (b) made on a super-priority administrative claim basis, and (ii) scheduling a final hearing with respect to the relief requested herein (this

---

[1]   The last four digits of the Debtor's federal tax identification number is 9680. The Debtor's service address is 75 Wadley Street, Pineville, LA 71360.

"**DIP Motion**").

As discussed in more detail below, the Debtor's ability to obtain the DIP Loan is critical to its ability to continue even reduced operations pending a Court-approved sale of the Debtor's assets in this chapter 11 bankruptcy case (the "**Chapter 11 Case**"). The proceeds of the DIP Loan will be used to fund certain costs of administering the Debtor's estate, including without limitation, payroll obligations, other operating expenses, fees assessed by the Office of the United States Trustee and the Clerk of Court, and the fees and expenses of the estate's professionals, as set forth in a credit agreement substantially in the form of **Exhibit 2** to this DIP Motion (the "**DIP Loan Agreement**").

## RELIEF REQUESTED

1.      Pursuant to Bankruptcy Rule 4001(c), the principal provisions of the proposed Interim DIP Order are as follows (capitalized terms used but not immediately defined herein shall have the meanings ascribed to them in this DIP Motion or the Interim DIP Order, as the case may be):

   a.      **Nature and Amount of DIP Loan**. Pursuant to the DIP Loan Agreement (collectively with any other notes, security agreement or other agreement or instrument executed by Debtor in connection with the DIP Loan Agreement, the "**DIP Loan Documents**"), the DIP Lender will lend to the Debtor through a revolving line of credit facility, during the Commitment Period, up to $1,400,000, on a secured, administrative priority basis under Bankruptcy Code sections 507(b) and 364(b).

   b.      **Borrowing Limits**. Borrowings under the DIP Loan may be made from the Closing Date through the earlier of (i) the first anniversary of the DIP Loan Agreement, and (ii) the termination of the commitment period following an event of default under the DIP Loan Agreement (the "**Commitment Period**"). The borrowings under the DIP Loan cannot exceed an aggregate principal amount of $1,400,000, as provided in the DIP Loan Agreement, and cannot exceed $500,000 until the Final DIP Order is entered. (DIP Loan Agreement §2(a) and definition of Maximum Amount.)

   c.      **Borrowing Conditions**. The initial borrowing under the DIP Loan is conditioned upon (i) entry of the Interim DIP Order on or before November 8, 2018, and (ii)

DIP Lender's receipt of DIP Loan Agreement and related loan documents, executed by the Debtor after entry of the Interim DIP Order. All borrowings under the DIP Loan are conditioned upon (i) no event of default having occurred and continuing under the DIP Loan Agreement, (ii) no injunction, writ, restraining order or other order prohibiting, directly or indirectly, the extending of credit under the DIP Loan Agreement, and (iii) the Interim DIP Order and Final DIP Order (if issued) being in full force and effect and not having been vacated, reversed, modified or stayed in any respect (and if either such order is the subject of any pending appeal, no performance of any obligation of any party shall have been stayed pending such appeal. (DIP Loan Agreement §§4(a) and 4(b)(iii).)

d.    **Interest Rate**. Interest accrues at a fixed rate of 8.25% per annum. (DIP Loan Agreement §4(a), and definition of "**Borrowing Rate.**")

e.    **Maturity Date**. Maturity Date means the earliest of (i) the first anniversary hereof, (ii) the date of acceleration of the DIP Loan Obligations of the Debtor pursuant to Section 6 of the DIP Loan Agreement, (iii) the date of the closing of the sale of the Debtor's assets pursuant to Bankruptcy Code section 363 and the Sale Motion (as defined below), (iv) the effective date of a chapter 11 plan in the Chapter 11 Case, or (v) the effective date of a conversion of the Chapter 11 Case a proceeding under chapter 7 of the Bankruptcy Code, or (iv) the dismissal of this chapter 11 case. (DIP Loan Agreement §§2(a) and 3(a), and definition of "**Maturity Date.**")

f.    **Certain Events of Default**. Among other Events of Default under the DIP Loan Agreement, an Event of Default occurs if, (i) an order amending, supplementing, staying, vacating or otherwise modifying the DIP Loan Agreement, Interim DIP Order or Final DIP Order is entered without the DIP Lender's consent, (ii) a chapter 11 trustee or examiner with expanded powers is appointed in the Chapter 11 Case, (iii) the Chapter 11 Case is dismissed or converted to chapter 7 of the Bankruptcy Code, (iv) the entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay to the detriment of DIP Lender, (v) the entry of an order in the Chapter 11 Case avoiding or requiring repayment of any portion of the payments made on account of the DIP Loan Obligations owed by the Debtor to the DIP Lender, or (vi) the Interim DIP Order or the Final DIP Order ceases to be in full force and effect. (DIP Loan Agreement §5.)

g.    **DIP Liens**. Upon (i) the date of entry of the Interim DIP Order and for borrowings after entry of the Interim DIP Order, or (ii) the date of entry of the Final DIP Order for borrowings after the Final DIP Order, the DIP Loan Obligations of the Debtor under the DIP Loan Documents shall be secured by all assets of the Debtor, subject only to valid, perfected, enforceable and non-avoidable liens and security interests granted by law or by the Debtor to any person or entity as of the Petition Date (collectively, the "**DIP Collateral**"). (DIP Loan Agreement §2(h).)

h.   **Perfection of DIP Liens Optional.**   At the option of the DIP Lender, the DIP Lender may record or cause to be recorded any Financing Statements, UCC 1 Notices, mortgages, or such security devices as the DIP Lender deems in its sole discretion to be advisable and which shall be unavoidable as set forth in Paragraph 14(g) of the proposed Interim DIP Order. The Debtor will cooperate with the DIP Lender in the perfection of any security devices or liens the DIP Lender deems advisable. However, the security interests or liens granted in or by this Order will be effective immediately and without the necessity of the execution by the Debtor of financing statements, mortgages, security agreements, or otherwise, in accordance with Bankruptcy section 364(2) and (3) on the DIP Collateral. (DIP Loan Agreement, §2(j)).   Notwithstanding the foregoing or anything herein to the contrary, the DIP Collateral shall not include any claims, causes of action and proceeds thereof arising under Bankruptcy Code sections 510, 544, 545, 546, 547, 548, 549, 550, and 551, including similar state laws (collectively, the "**Avoidance Actions**").  (DIP Loan Agreement, §2(h)).

2.   The DIP Lender is a Louisiana limited liability company, owned by Sharon Baker Martin and James R. Baker, Jr., each of whom (a) is a shareholder of the Debtor, and (b) executed guaranties in favor of the Red River Bank Secured Obligations (as defined below).

3.   In accordance with Bankruptcy Rule 4001(c), the Debtor has identified below, by page and paragraph number, the location of each of the following provisions:

| Provision | Contained in DIP Loan Agmt or Interim DIP Order | Location in DIP Loan Agmt or Proposed Interim DIP Order | Location in DIP Motion |
|---|---|---|---|
| (1)   A grant of priority or a lien on property of the estate under sections 364(c) or (d). | X  Yes<br>☐  No | Interim DIP Order ¶18(b) & (c); DIP Loan Agmt §2(a) | ¶ 1(g) |
| (2)   The providing of adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under section 364 to make cash payments on account of the claim. | ☐  Yes<br>X  No | N/A | N/A |

| Provision | Contained in DIP Loan Agmt or Interim DIP Order | Location in DIP Loan Agmt or Proposed Interim DIP Order | Location in DIP Motion |
|---|---|---|---|
| (3) A judicial determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim. | ☐ Yes<br>X No | N/A | N/A |
| (4) A waiver or modification of Bankruptcy Code provisions or applicable rules relating to the automatic stay. | ☐ Yes<br>X No | N/A | N/A |
| (5) A waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under section 363(c), or request authority to obtain credit under section 364. | ☐ Yes<br>X No | N/A | N/A |
| (6) The establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order. | ☐ Yes<br>X No | N/A | N/A |
| (7) A waiver or modification of the applicability of non-bankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien. | X Yes<br>☐ No | DIP Loan Agmt § 2(a); Interim DIP Order ¶1(h) | 1(h) |
| (8) A release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action. | ☐ Yes<br>X No | N/A | N/A |

| Provision | Contained in DIP Loan Agmt or Interim DIP Order | Location in DIP Loan Agmt or Proposed Interim DIP Order | Location in DIP Motion |
|---|---|---|---|
| (9) The indemnification of any entity. | ☐ Yes<br>X No | N/A | N/A |
| (10) A release, waiver, or limitation of any right under Bankruptcy Code section 506(c). | ☐ Yes<br>X No | N/A | N/A |
| (11) The granting of a lien on any claim or cause of action arising under Bankruptcy Code sections 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a). | ☐ Yes<br>X No | N/A | N/A |

4.     In addition, the Debtor requests that the Court: (a) schedule, pursuant to Bankruptcy Rule 4001(c), an interim hearing on the DIP Motion (the "**Interim DIP Hearing**") to consider entry of the Interim DIP Order and the relief set forth therein; (b) schedule, through the Interim DIP Order, pursuant to Bankruptcy Rule 4001(c)(2), the final hearing on this DIP Motion (the "**Final DIP Hearing**") no later than twenty-one days from entry of the Interim DIP Order to consider entry of the Final DIP Order, to authorize borrowings under and approving the terms of the DIP Loan on a final basis as set forth herein; and (c) approve the Debtor's notice procedures with respect to the Final DIP Hearing.

### JURISDICTION AND VENUE

5.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief sought herein are Bankruptcy Code §§ 105(a) and 364, Bankruptcy Rule 4001(c).

## BACKGROUND

6.     On the date hereof (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under the Bankruptcy Code.

7.     The Debtor remains in possession of its property and is managing its business as debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee has been appointed, and no official committee has been appointed in this Chapter 11 Case.

8.      The Debtor is recognized as a leading innovator and manufacturer of height adjustable work surfaces that both provide solutions for office workers of different physiques and improve worker productivity and well-being.

9.     In further support of this DIP Motion, Debtor relies upon and incorporates by reference the *Declaration of Charles E. Martin in Support of First Day Motions* (the "**Martin Declaration**"), filed on the Petition Date.

### DESCRIPTION OF THE RED RIVER BANK SECURED OBLIGATIONS AND THE RED RIVER BANK CASH COLLATERAL

10.     The Debtor, as borrower, and Red River Bank, as lender ("**Red River Bank**"), are parties to (a) that certain Loan Agreement dated as of September 13, 2002 (the "**Red River Bank Loan Agreement**"), and (b) that certain Security Agreement, also dated as of September 13, 2002 (the "**Security Agreement**").  To secure its obligations under the Red River Bank Loan Agreement (collectively, the "**Red River Bank Secured Obligations**"), in the Red River Bank Security Agreement, the Debtor expressly granted Red River Bank first priority security interests (collectively, the "**Red River Bank Personal Property Liens**") on all or substantially all of the Debtor's personal property, including, but not limited to, all of the Debtor's right, title and interest in and to all accounts due and owing from all customers, including  but not limited to governmental customers, all contractual payments due by the United States Postal Service, all

inventory, equipment, fixtures, accounts receivable, general intangibles, instruments, documents, chattel papers, deposit accounts and all other property of every kind or nature, whether any of the foregoing was owned then or acquired later; all accessions, additions, replacements, and substitutions related to any of the foregoing, all records of any kind relating to any of the foregoing; all proceed related to any of the foregoing (including insurance, chattel paper and accounts proceeds) and all related general intangibles (collectively, the "**Red River Bank Personal Property Collateral**").[2]

11.     As of the Petition Date, the following amounts are owed Red River Bank on and with respect to the Red River Bank Secured Obligations: (a) approximately $4,290,225 in principal and (b) in accrued, unpaid interest less than $2,000.

12.     The Debtor has not filed a motion for authority to use any (a) prepetition cash, (b) receivables generated before the Petition Date, or (c) proceeds of the foregoing (the "**Red River Bank Cash Collateral**"). Instead, the Debtor intends to segregate the Red River Bank Cash Collateral and hold the same pending further Order of this Court. Because the Debtor will not use the Red River Bank Cash Collateral, the Debtor proposes a DIP Loan to fund its operations pending the approval of a Sale Transaction, as discussed below.

---

[2]    Shortly before the Petition Date, in order to obtain additional advances of funds to pay the Company's immediate operating obligations, including payroll, the Debtor executed the following Assignments of Life Insurance Policy as Collateral, each issued by The Lincoln National Life Insurance Company ("**Lincoln**"):  (a) that certain universal life policy, base coverage $50,000, with a net cash surrender value as of April 30, 2018, of $131,663.45, Alfred D. Muse, the insured; and (b) that certain universal life policy, base coverage $50,000, with a net cash surrender value as of April 30, 2018, of $121,103.64, Richard B. Swain Sr., the insured. Before the Petition Date, the Debtor submitted applications to Lincoln to claim the net cash surrender value of the foregoing life insurance policies. Based on Red River Bank's assignment and security interest, the Debtor intends to permit Lincoln to pay the net cash surrender value to Red River Bank.

## THE SALE MOTION

13.    As set forth in the Martin Declaration, the Debtor has been losing money in recent months and, therefore, there is a need to expedite the sale process in order to preserve the value of the assets for the Debtor's estate. Before the commencement of this Chapter 11 Case, the Debtor retained the services of Legacy Capital, LLC (the "**Investment Banker**") to determine the best manner to maximize the value of the estate's assets.

14.    After consultation with its professionals, including the Investment Banker, the Debtor determined that the sale of substantially all of its assets is in the best interest of all of the Debtor's estate.  To attract the best and highest offers available in the market, the Debtor has initiated a process to market the Debtor's assets and will file the Sale Motion.

15.    The Debtor's decision to sell the assets is based upon its sound business judgment, is in the best interest of its estate and its stakeholders, and should be approved. Moreover, based on the value of the assets and the liabilities associated with those assets, Debtor has concluded that its only option is to sell the assets.

## LEGAL ARGUMENT

### A.    The Debtor Cannot Obtain Financing on Terms More Favorable than Those in the DIP Loan Agreement.

16.    Bankruptcy Code section 364 states that a debtor-in-possession that is authorized to operate its business may obtain financing either in the ordinary course of business or outside the ordinary course of business. First, Bankruptcy Code section 364(a) allows the debtor to obtain unsecured credit and to incur unsecured debt in the ordinary course of business. 11 U. S.C. § 364(a).   Second, after notice and a hearing, the Court may authorize a debtor-in-possession to obtain unsecured credit or incur unsecured debt outside the ordinary course of business allowable as an administration expense under Bankruptcy Code section 503(b)(1). 11

U.S.C. § 364(b).

17.    If the debtor-in-possession is unable to obtain unsecured credit on this basis, Bankruptcy Code section 364(c) allows the Court, after notice and a hearing, to authorize the debtor-in-possession to obtain credit or to incur debt that has priority over administrative expenses under Bankruptcy Code section 503(b)(1), that is secured by a lien on unencumbered estate property, or that is secured by a junior lien on encumbered estate property. 11 U.S.C. §§ 364(c)(1),(2) and (3).

18.    Other than the requirement of notice and a hearing, the only statutory prerequisite under Bankruptcy Code section 364(c) for obtaining credit on a secured basis and superpriority basis is that the debtor-in-possession must be unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1). 11 U.S.C. § 364(c)(2). The Bankruptcy Code offers a debtor-in-possession additional flexibility to the extent that it needs to borrow additional funds.

19.    Bankruptcy Code section 364 provides a progression of various protections to induce a postpetition lender to extend credit to a debtor-in-possession. *In re Sun Runner Marine, Inc.*, 945 F.2d 1089, 1092-93 (9th Cir. 1991). These include administrative priority, super-priority and secured status. 11 U.S.C. § 364.  In addition, parties who extend credit are protected under section 364(e) from the effects of a reversal on appeal of the authorization to incur debt as long as they have acted in good faith.

20.    To demonstrate that the requisite credit is not obtainable on an unsecured basis, the debtor need only demonstrate "by good faith effort that credit was not available" without the protections afforded to potential lenders by Bankruptcy Code section 364(c). *Bray v. Shenandoah Fed. Say. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986).

Thus, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Id.* at 1088; *see also In re Reading Tube Indus.*, 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987) ("Given the 'time is of the essence' nature of this type of financing, we would not require this or any debtor to contact a seemingly infinite number of possible lenders."). Where few lenders are likely to be able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom., Anchor Savings Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 (N.D. Ga. 1989).

21.     Most of, if not all of, the Debtor's personal property is encumbered by the Red River Bank Personal Property Liens, including, but not limited to, the Red River Bank Cash Collateral.  The Debtor has been unable to negotiate an acceptable agreement and order for the use of the Red River Bank Cash Collateral during the Chapter 11 Case.  Under these circumstances, stand-alone postpetition financing on an unsecured basis during the Chapter 11 Case would be virtually impossible to obtain.  It is highly unlikely that a lender would make a loan for which no debt service payments can be made during the Chapter 11 Case unless there are other considerations for the making of such a loan.

**B.     Sound Business Judgement Supports the Debtor's Decision to Enter into the DIP Loan.**

22.     Courts generally give broad deference to the business decisions of a debtor. *See, e.g., In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Lionel Corporation*, 722 F.2d 1063, 1070 (2d Cir. 1983); *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1987). In particular, a bankruptcy court should defer to a debtor's reasonable business judgment regarding the need for funds, so long as the proposed financing agreement does not contain terms that either leverage the bankruptcy process or that benefit a

third party rather than the bankruptcy estate. *See, e.g., In re Trans World Airlines, Inc.,* 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that an interim loan, receivables facility and asset-based facility were approved because they "reflect[ed] sound and prudent business judgment . . . , [were] reasonable under the circumstances and in the best interest of [the debtor] and its creditors"). This was explained by the bankruptcy court in *In re Ames Department Stores, Inc.,* 115 B.R. 34 (Bankr. S.D.N.Y. 1990):

> [A] court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.

*Id.* at 40.

23.     Here, the Debtor's decision to enter into the DIP Loan Agreement represents a reasonable exercise of its business judgment. The Debtor has been unable to negotiate an agreement with Red River Bank regarding the use of its cash and receivables during the Chapter 11 Case. Therefore, the Debtor needs the DIP Loan to operate pending the closing of the Sale Transaction. The DIP Loan will permit the Debtor to complete the process of selling its assets and completing the Sale Transaction in a manner that is designed to optimize the value of the Debtor's assets.

**C.     The Terms of the DIP Loan Agreement are Reasonable under the Circumstances and Should Be Approved.**

24.     The terms of the DIP Loan Agreement are similar to those often included in complex financing arrangements.  Indeed, the DIP Loan Agreement and the Interim DIP Order reflect the give and take that result from complex financing negotiations. Courts have recognized that a debtor often must make significant concessions in exchange for financing. *See, e.g., In re Ellingsen MacLean Oil Co.,* 65 B.R. 358, 365 (Bankr. W.D. Mich. 1986), *aff'd,* 834 F.2d 599

(6th Cir. 1987) (chapter 11 postpetition financing is "fraught with dangers for creditors . . ."). Accordingly, courts recognize that a debtor may need to "enter into a hard bargain with a creditor in order to acquire the needed funds to complete reorganization." 65 B.R. at 365.

25.     The terms of the DIP Loan Agreement are fair and reasonable under the circumstances. For example, the Debtor does not propose, among other things, granting the DIP Lender: (a) any lien that would outrank valid liens that exist on the Petition Date; (b) any lien on avoidance actions under chapter 5 of the Bankruptcy Code, including similar state laws; or (c) the right to any automatic termination of the stay under Bankruptcy Code section 362.

26.     Similarly, lenders often agree to subordinate or "carve-out" from their collateral funds to pay professionals. *See Harvis Trien & Beck, P.C. v. Federal Home Mortgage Corp. (In re Blackwood Assocs., L.P.),* 187 B.R. 856, 860 (Bankr. E.D.N.Y. 1995) (court advised that if professionals really want to be paid they had best insist upon a "real carve out"); *In re Ames*, 115 B.R. at 40 (noting practice of district to insist on carve-out for fees in order to preserve adversary system).

**D.     The Court Should Schedule Interim and Final DIP Hearings under Rule 4001(c)(2).**

27.     Bankruptcy Rule 4001(c)(2) provides that a final hearing on a motion to obtain credit pursuant to Bankruptcy Code section 364 may be commenced not earlier than fourteen (14) days after service of a financing motion. Upon request, however, the Bankruptcy Court is empowered to conduct an expedited hearing on a financing motion and authorize the obtaining of credit, on an interim basis, to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

28.     Pursuant to Bankruptcy Rule 4001(c)(2), the Debtor requests the Court conduct an expedited Interim DIP Hearing, and, after the entry of the Interim DIP Order, allow the Debtor to

enter into the DIP Loan Agreement by the required deadline, borrow funds in accordance therewith up to the maximum principal amount of $500,000. The Debtor further requests the Court to schedule the Final DIP Hearing to permit the Debtor to borrow under the DIP Loan, on a final basis, up to the maximum principal amount of $1,400,000.

29. The Debtor has an urgent and immediate need for cash to fund chapter 11 administration expenses and operations. The Debtor has been unable to obtain financing on terms more favorable than presented herein.

30. Absent entry of an Interim DIP Order on an emergency basis, the Debtor's efforts to finalize a Sale Transaction cannot be accomplished. Under the circumstances, the granting of the relief requested by the DIP Motion is warranted.

31. In light of the foregoing, and pursuant to Bankruptcy Rule 4001(c)(2), the Debtor requests that the Court schedule the Final DIP Hearing no later than twenty-one days from entry of the Interim DIP Order, and that the Court authorize Debtor to enter into the DIP Loan Agreement on a final basis at such hearing.

## NOTICE

32. Notice will be served on: (a) counsel to Red River Bank, Bradley L. Drell, Gold, Weems, Bruser, Sues & Rundell, P.O. Box 6118, Alexandria, LA 71307-6118, Email: bdrell@goldweems.com; (b) any other creditor known to have claimed a security interest in any of the Debtor's assets, including (i) First Western Bank & Trust, 100 Prairie Center Drive, Eden Prairie, MN 55344, and (ii) De Lage Landen Financial Services, Inc., 1111 Old Eagle School Road, Wayne, PA 19087; (c) the Debtor's known 20 largest unsecured creditors; (d) the Office of the U.S. Trustee, Richard Drew, 300 Fannin, Suite 3196, Shreveport, LA 71101, Email: richard.drew@usdoj.gov; and, (e) any party who has requested notice in this Chapter 11 Case.

**WHEREFORE,** the Debtor respectfully requests entry of an Interim DIP Order and

Final DIP Order, granting the relief requested herein, and such other further relief as is just.

*/s/ Mark A. Mintz*
ELIZABETH J. FUTRELL (#05863)
MARK A. MINTZ (#31878)
LAURA F. ASHLEY (#32820)
MADISON M. TUCKER (#37722)
Jones Walker LLP
201 St. Charles Avenue, 51st Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-8000
Facsimile: (504) 589-8260
Email: efutrell@joneswalker.com
Email: mmintz@joneswalker.com
Email: lashley@joneswalker.com
Email: mtucker@joneswalker.com

**PROPOSED ATTORNEYS FOR
THE DEBTOR**